# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DWIGHT L. SHERMAN**                                **CIVIL ACTION**

**VERSUS**                                          **NO. 13-6054**

**RK RESTAURANTS HOLDINGS, INC. d/b/a**             **SECTION: "G"(3)**
**RALPH & KACOO'S**

## ORDER AND REASONS

This litigation arises out of Plaintiff Dwight L. Sherman's employment at a restaurant owned by Defendant RK Restaurants Holdings, Inc. (*d/b/a* Ralph and Kacoo's). Pending before the Court is RK Restaurants Holdings, Inc.'s "Motion to Stay Proceedings Pending Arbitration."[1] After considering the pending motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the pending motion.

## I. Background

### A.    Factual Background

In his complaint, Sherman asserts that RK hired him in September 2011 to serve as an executive chef at RK Restaurants Holdings, Inc's ("RK") restaurant at 519 Toulouse Street in New Orleans.[2] Sherman alleges that during his employment at the restaurant, RK's employees, managers, supervisors, or owners used humiliating and demeaning "epithets, slurs, jargon, and talk" directed at his race and religion.[3] These individuals purportedly began using derogatory racial and religous terms on an "ongoing basis" starting in April 2012.[4] According to Sherman, his immediate

---

[1] Rec. Doc. 4.

[2] Rec. Doc. 1–1 at 1–2.

[3] *Id.* at 2.

[4] *Id.*

supervisors and managers were Don Davis and Don Burdette, who allegedly were also RK's owners.[5] Sherman specifically describes several encounters in which the "owners/supervisors/managers" used racial and religious epithets when speaking to him,[6] and further states that these individuals accused him of "theft, fraud, neglect of duties, and poor employee relations" in the presence of Sherman's co-workers.[7] Sherman claims that his employment with RK was terminated in September, 2012, and, following his termination, that the allegations against him were repeated to his prospective employers.[8]

## B.    Procedural Background

On August 29, 2013, Sherman filed a petition against RK in the Civil District Court for the Parish of Orleans.[9] In his petition, Sherman claims: (1) "religious and racial discrimination / harassment"; (2) intentional infliction of emotional distress; (3) defamation; and (4) libel.[10] He seeks damages for: (1) mental pain and suffering; (2) lost earnings; (3) physical pain and suffering; and (4) humiliation and embarrassment, as well as (5) wages due, pursuant to LA. REV. STAT. § 23:631.[11] The Civil District Court for the Parish of Orleans set a hearing to show cause regarding Sherman's claim for wages for September 24, 2013, and subsequently continued the hearing to October 9,

---

[5]  *Id.*

[6]  *Id.* at 2–3.

[7]  *Id.* at 3.

[8]  *Id.* at 2.

[9]  *Id.* at 1.

[10]  *Id.* at 1–4.

[11]  *Id.* at 4–5.

2013.[12] RK filed a "Dilatory Exception of Prematurity and Motion to Stay Proceedings Pending Arbitration" on September 20, 2013,[13] and then, invoking diversity jurisdiction, removed the action to this Court on October 4, 2013.[14] On December 3, 2013, RK filed a "Motion to Stay Proceedings Pending Arbitration."[15] That motion is presently pending before the Court; it is the only pending motion in this case. Sherman filed a memorandum in opposition to the motion on December 10, 2013.[16] On December 17, with leave of court, RK filed a reply in further support of its motion.[17]

## II. Parties' Arguments

### A. RK's "Motion to Stay Proceedings Pending Arbitration"

RK argues that this Court should stay the proceedings in this matter because the Federal Arbitration Act ("FAA") and the Louisiana Binding Arbitration Law ("LBAL") prohibit courts from deciding a dispute—such as the present case—that is subject to an enforceable arbitration agreement.[18] According to RK, federal courts in Louisiana regularly enforce arbitration agreements, including agreements between restaurants and their former employers,[19] and Louisiana state Courts

---

[12] *Id.* at 11.

[13] *Id.* at 18.

[14] Rec. Doc. 1. In its "Notice of Removal," RK argues that this Court has jurisdiction under 28 U.S.C. § 1332, because: (1) there is complete diversity between the parties, because Sherman is a Louisiana citizen, and RK is a Delaware corporation with its principal place of business in Texas; and (2) plaintiff's claims demonstrate that at least $75,000 is in controversy. *Id.* at 2–4.

[15] Rec. Doc. 4.

[16] Rec. Doc. 6.

[17] Rec. Doc. 11.

[18] Rec. Doc. 4–2 at 4 (citing 9 U.S.C. § 1 *et seq.*; La Rev. Stat. 9:4201 *et seq.*).

[19] *Id.* at 5–9 (discussing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 239 (5th Cir. 2013) (reversing the district court's denial of a former employer's motion to compel arbitration); *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 681 (5th Cir. 2006) (reversing the district court's denial of a former employer's motion to compel arbitration and

of Appeal do likewise.[20]

RK argues that Sherman repeatedly signed and initialed the pages in its Employee Handbook that set forth a "Mutual Agreement to Arbitrate Claims," indicating that he expressly agreed to arbitrate all:

> [C]laims for wages or other compensation due . . . tort claims; [and] claims for discrimination (including, but not limited to, race, sex, gender, religion, national origin, age, marital status, or medical condition, handicap, or disability; [and] claims for retaliation or harassment[.][21]

RK contends that the Court should follow a "two-step framework" for resolving the present motion,[22] and, applying that framework, should find that: (1) a valid agreement to arbitrate exists here; and (2) no statutory or policy reasons render Sherman's claims nonarbitrable.

According to RK, the facts in the present case are "virtually indistinguishable" from the facts in the Louisiana Second Circuit Court of Appeal's *Stadtlander v. Ryan's Family Steakhouses* case and the United States District Court for the Middle District of Louisiana's *Rogers v. Brown* case,

> In which restaurants filed pleadings to compel arbitration of lawsuits brought by former employees who had signed broad arbitration agreements during the application and hiring process[,] [and the] courts granted the relief requested by the

---

concluding that the Unformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4302(b) does not preclude the enforcement of employer–employee arbitration agreements); *Folse v. Richard Wolf Medical Ins,truments Corp.*, 56 F.3d 603, 606 (5th Cir. 1995) (reversing the district court's order denying a former employer's motion to compel a former employee's return to arbitration); *Anderson v. Waffle House,*920 F.Supp.2d 685, 695 (E.D. La. 2013) (Barbier, J.) (granting former employer's motion to dismiss litigation pending arbitration pursuant to Section 3 of the FAA); *Rogers v. Brown*, 986 F.Supp. 354, 361 (M.D. La. 1997) (granting former employer's motion to stay litigation pending arbitration under Section 3 of the FAA)).

[20] *Id.* at 9–13 (discussing *Stadtlander v. Ryan's Family Steakhouses*, 34, 384 [sic] (La. App. 2 Cir. 4/4/01), 794 So.2d 881, 892 (reversing trial court's denial of an employer's "Exception of No Cause of Action" due to an arbitration agreement); *Welch v. A.G. Edwards & Sons, Inc.*, 95-2085 (La. App. 4 Cir. 5/15/96), 677 So.2d 520, 526 (affirming the trial court's order denying a former employee's motion to vacate an arbitration award)).

[21] *Id.* at 14.

[22] *Id.* (citing *Klein,* 710 F.3d 234; *Anderson*, 920 F.Supp.2d 685)

restaurants because the FAA and the Louisiana Binding Arbitration law require a court to grant a motion to stay a lawsuit pending arbitration if there is a valid agreement to arbitrate between the parties, and the dispute in question falls within the scope of that agreement.[23]

RK asserts that the courts in both cases rejected the plaintiffs' arguments that the arbitration agreements at issue were "contracts of adhesion," since the employees could have refused to sign the arbitration agreement and sought work elsewhere.[24] RK also notes that in *Welch v. A.G. Edwards & Sons*, the Louisiana Fourth Circuit Court of Appeal rejected the plaintiff's argument that an arbitration agreement was an unenforceable contract of adhesion.[25] Additionally, RK argues, the district court in *Rogers* found that employment provided sufficient "cause" to bind the employee to the arbitration agreement.[26] RK contends that Sherman's contract is also supported by additional "cause"—specifically, its agreement to arbitrate its own claims against Sherman.[27]

## B.  Sherman's Arguments in Opposition

In his "Memorandum in Opposition to Dilatory Exception of Prematurity and Motion to Stay Proceedings Pending Arbitration,"[28] Sherman contends that the Court should deny RK's motion because the Arbitration Agreement (1) is unconscionable, and (2) does not require arbitration in the present case.[29] According to Sherman, the Arbitration Agreement is unconscionable because it:

---

[23]  *Id.* at 14–15 (citing *Rogers*, 986 F.Supp. at 358; *Stadlander*, 794 So.2d at 887–92).

[24]  *Id.* at 15.

[25]  *Id.*

[26]  *Id.*

[27]  *Id.*

[28]  Rec. Doc. 6 at 1. Despite the title of Sherman's opposition, RK's pending motion does not mention a "Dilatory Exception of Prematurity."

[29]  *Id.* at 2–5.

> [F]orces [Sherman], a resident of New Orleans, Louisiana, to arbitrate any claim against the company in Lufkin, Texas or Nacogdoches, Texas, both of which are over three hundred and fifty miles away . . . [and because it] attempts to replace a federal judge with an arbitrator, who will be a Texas attorney, who will interpret Louisiana law using Federal Civil Procedure and the Federal Rules of Evidence.[30]

Sherman contends that LA. REV. STAT. § 23:921(A)(2) "clearly provides that every choice of forum clause in agreements between employees and employers is null," unless the employee agrees to the clause "after the incident."[31] This statute is intended to protect Louisiana citizens, Sherman argues, and under the United States Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Company*, contractual forum selection clauses: "should be held unenforceable if enforcement would contravene a strong public policy of the forum in which the suit is brought[.]"[32] Sherman further asserts that the Arbitration Agreement:

> [I]nstead of streamlining the resolution of the dispute, actually further complicates the litigation in that a Texas attorney will interpret Louisiana law using the Federal procedures.[33]

Finally, Sherman argues that the Arbitration Agreement does not bar litigation of his claims, because the Arbitration Agreement contains a clause stating that the Agreement does not and is not intended to bar plaintiffs from filing charges in certain administrative forums.[34] According to Sherman, this clause applies here because his:

> [C]auses of action against the defendant are employee-related and this litigation, which began in state court, is the result of his pursuing charges or complaints that are

---

[30] *Id.*

[31] *Id.* at 3.

[32] *Id.* (citing *M/S Bremen*, 407 U.S. 1, 15 (1972)).

[33] *Id.* at 4.

[34] *Id.*

claims not covered by the agreement.[35]

## C.     RK's Reply in Further Support of its Motion

In its "Reply to Plaintiff's Opposition to Defendant's Motion to Stay Proceedings Pending Arbitration," RK maintains that a line of United States Supreme Court decisions establish that the FAA preempts any Louisiana statute that restricts the use of arbitration agreements, including LA. REV. STAT. § 23:921(A)(2).[36] According to RK, Sherman would still be required to arbitrate his claims against it even if the Arbitration Agreement's forum selection clause were unenforceable under LA. REV. STAT. § 23:921(A)(2), since the Arbitration Agreement contains a severability clause.[37]

RK next argues that Sherman's criticisms of the Arbitration Agreement are "illogical," noting that "there is nothing unlawful about requiring an arbitrator to interpret Louisiana law and to conduct a proceeding in accordance with [the] Federal Rules of Civil Procedure and Rules of Evidence."[38] Finally, RK asserts that all of Sherman's claims are "expressly covered" by the Arbitration Agreement, since he has filed tort claims, claims for wages, and claims of discrimination, all of which fall within the scope of the Agreement, and has not mentioned anything about filing charges or complaints with any of the agencies listed in the section of the agreement titled "Claims not

---

[35] *Id.* at 5.

[36] Rec. Doc. 11 at 1-3 (citing, among other cases, *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (concluding that the FAA preempted a California statute mandating a judicial forum for the resolution of certain disputes).

[37] *Id.* at 4. RK further argues that, even if the forum selection clause were unenforceable, "the remainder of the Arbitration Agreement should be enforced consistent with the overwhelming state and federal policy favoring arbitration." *Id.* at 4 (citing *Stadlander*, 794 So.2d at 889).

[38] *Id.* at 5.

Covered by this Agreement."[39] RK argues that even if Sherman had filed charges or complaints with a listed agency, his present claims would still be covered by the Arbitration Agreement.[40]

### III. Law and Analysis

**A.    Whether Litigation Must be Stayed Pending Arbitration**

RK argues that both the FAA and the LBAL require the Court to stay litigation pending arbitration, although the parties do not dispute that the FAA governs here.[41] The FAA, as codified at 9 U.S.C. § 2,  provides that:

> A **written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction**, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract.**[42]

Section 1 of the FAA defines "commerce" as meaning "[c]ommerce among the several States or with foreign nations."[43] In *Perry v. Thomas*, the United States Supreme Court concluded that the FAA "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause [of the United States Constitution]."[44] In *Southland Corp. v. Keating*, the United States Supreme Court held that "the involving commerce requirement in § 2 [is] a necessary qualification

---

[39]  *Id.* at 6–7.

[40]  *Id.*

[41]  Rec. Doc. 4–4 at 4.

[42]  9 U.S.C. § 2.

[43]   9 U.S.C. § 1.

[44]   482 U.S. 483, 490 (1987). In *Perry*, the Supreme Court held that § 2 of the FAA preempted a California statute that provided a judicial forum for actions seeking to collect wages, notwithstanding any arbitration agreement between the parties. *Id.* at 484; 492.

on a statute intended to apply in state and federal courts."[45]

In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[46] Thus, the court explained, "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[47] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[48]

The FAA, as codified at 9 U.S.C. § 3, gives federal courts authority to stay litigation pending arbitration; it provides as follows:

> If any suit or proceeding be brought in the courts of the United States upon **any issue referable to arbitration under an agreement in writing for such arbitration**, the court in which such suit is pending, **upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement**, **shall on application of one of the parties stay the trial of the action** until such arbitration has been held in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.[49]

---

[45] 465 U.S. at 14–15. Neither RK nor Sherman argues that the FAA is inapplicable in the present case, although RK points out that the LBAL contains a provision that has the same effect as Section 2 of the FAA. LA. REV. STAT. § 9:4201 provides:

> **A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract**, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, **shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.**

[46] 379 F.3d 159, 166 (5th Cir. 2004) (citations omitted).

[47] *Id.*

[48] *Id.*

[49] 9 U.S.C. § 3 (emphasis added). As noted above, although neither Sherman nor RK argue that the FAA does not apply here, RK notes that LBAL, LA. REV. STAT. § 4202, is identical to Section 3 of the FAA; it states:

> If any suit or proceedings be brought upon **any issue referable to arbitration under an agreement**

As the United States Court of Appeals for the Fifth Circuit has observed, Section 3 of the FAA is mandatory, providing that federal courts "*shall* on application of one of the parties stay the trial of the action."[50]

In *Jones v. Halliburton, Co.*, the United States Court of Appeals for the Fifth Circuit articulated a two-step analysis governing this determination.[51] The first step is comprised of two inquiries: whether a valid agreement to arbitrate exists, and whether the dispute in question falls within the scope of the agreement.[52] "If both questions are answered in the affirmative, [a] court then asks whether any federal statute or policy renders the claims nonarbitrable."[53]

---

**in writing for arbitration**, the court in which suit is pending, **upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action** until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

[50] *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342 (5th Cir. 2004) (construing 9 U.S.C. § 3, reasoning that "[t]he grammatical structure of this sentence would seem to make clear that any of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement," and ordering the district court to grant a nonsignatory's motion to compel arbitration).

[51] *See Jones*, 583 F.3d at 233–34.

[52] *Id.* at 234.

[53] *Id.* In *Klein*, the United States Court of Appeals for the Fifth Circuit described the inquiry as follows:

Our first task is to determine whether the parties agreed to arbitrate the dispute. Two questions guide this analysis: **(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement**? Because arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate. That inquiry is governed by ordinary state-law contract principles. It is only in step two of the analysis, determining the scope of a valid arbitration agreement, that we apply the federal policy and resolve ambiguities in favor of arbitration. 710 F.3d at 236-37 (citations omitted).

### 1. Whether a Valid Agreement to Arbitrate Exists

The first subpart of the two-step analysis set forth in *Jones*[54] considers whether a valid agreement to arbitrate exists. In making this determination, the Court applies "ordinary state-law principles that govern the formation of contracts."[55] For example, in *Fleetwood Enterprises, Inc. v. Gaskamp*, the United States Court of Appeals for the Fifth Circuit applied Texas contract law to determine whether non-signatories were bound by an arbitration agreement.[56] Similarly, in *May v. Higbee Co.*, the United States Court of Appeals for the Fifth Circuit applied Mississippi law to resolve the question of whether the plaintiff sufficiently manifested assent to an arbitration agreement.[57] In *Klein*, the United States Court of Appeals for the Fifth Circuit applied Louisiana law to determine whether the plaintiff agreed that arbitration would be the "exclusive procedural mechanism for the final resolution of all disputes."[58]

RK asserts that a valid arbitration agreement exists because: (1) Sherman signed and initialed the portion of an employee handbook titled "Mutual Agreement to Arbitrate Claims" that set forth the terms governing the arbitration of disputes between the parties, and (2) that Sherman's act of signing the agreement formed a contract that was supported by valid legal cause, specifically Sherman's employment and RK's agreement to arbitrate its disputes against Sherman.[59] Sherman

---

[54] *Id.* at 233.

[55] *Fleetwood*, 280 F.3d at 1073. In this case, the parties do not dispute that Louisiana law applies to this step of the inquiry.

[56] *Id.* at 1073-77.

[57] 372 F.3d 757, 764-65 (5th Cir. 2004).

[58] 710 F.3d at 238-39.

[59] Rec. Doc. 4–2 at 14–15.

does not dispute that he signed the Agreement. He contends, however, that the arbitration agreement is unconscionable because it contains a forum selection clause that requires him to travel to Texas to arbitrate his claims before a Texas attorney, who will apply Louisiana law using the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Under Louisiana law, a contract is "an agreement by two or more people whereby obligations are created, modified, or extinguished."[60] Moreover, under Louisiana law, "obligation cannot exist without a lawful cause."[61] "Cause is the reason why a party obligates himself."[62] Louisiana law also provides that "[i]t is well-settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."[63] Here, as noted above, it is undisputed that Sherman signed the acknowledgment page. Sherman also does not dispute that the Arbitration Agreement is supported by a lawful cause.

RK cites two cases in which Louisiana courts and federal district courts granted restaurants' motions to compel arbitration with employees.[64] According to RK, these cases are "virtually indistinguishable" from the present case.[65] In *Rogers v. Brown*, a decision from the United States District Court for the Middle District of Louisiana, the plaintiff argued, in part, that the pre-printed

---

[60] LA. REV. STAT. § 5:1906.

[61] LA. REV. STAT. § 5:1966.

[62] LA. REV. STAT. § 5:1967.

[63] *Coleman v. Jim Walter Homes, Inc.* 2008–1221 (La. 3/17/09), 6 So.3d 179, 183.

[64] Sherman does not cite or attempt to distinguish these cases.

[65] Rec. Doc. 4–2 at 14.

arbitration agreement she signed was: (1) an unenforceable contract of adhesion due to unequal bargaining power between the plaintiff and her employer; and (2) invalid because she received no consideration in return for her agreement to arbitrate.[66] The district court rejected these arguments, concluding that: (1) the plaintiff could have avoided the arbitration agreement by seeking another job,[67] and (2) the plaintiff's employment was a valid cause of the contract.[68]

RK also cites *Stadtlander v. Ryan's Family Steakhouses, Inc.*, a decision from the Louisiana Second Circuit Court of Appeal.[69] There, the plaintiff argued, in part, that the pre-printed arbitration agreement at issue in that case was: (1) an unenforceable contract of adhesion; (2) invalid by virtue of the unequal bargaining power between the parties; and (3) internally contradictory, because it purported to preserve the plaintiff's substantive rights while foreclosing her right to appeal the arbitrator's decision.[70] The court rejected each of these arguments, holding that: (1) the plaintiff signed the arbitration agreement, and thus was presumed to have understood (and assented to) its contents; (2) there was not a wide disparity in bargaining power between the plaintiff and the defendant, because the plaintiff could have sought another job instead of signing the agreement; (4) the contract was not internally contradictory, since it permitted the plaintiff to vindicate her

---

[66] 986 F.Supp. at 358–60.

[67] *Id.* at 359–60. RK contends that "the relevant facts and legal issues in the [Louisiana Fourth Circuit Court of Appeal's] *Welch* [*v. A.G. Edwards & Sons, Inc.*] case also are similar to those in the instant case," and that the decision in that case "provides additional support" for RK's present motion. Rec. Doc. 4-2 at 15 (citing *Welch*, 677 So.2d at 525). In *Welch*, the plaintiff appealed the district court's order denying his motion to vacate an arbitration award, contending, in part, that his arbitration agreement with the defendant was a contract of adhesion. *Id.* The court rejected this argument, because the plaintiff "could have avoided the clause by simply rejecting the employment with the defendant." *Id.*

[68] *Id.* at 359.

[69] 34,384 [sic.] (La. App. 2 Cir. 4/4/01), 794 So.2d 881.

[70] *Id.* at 889–91.

13

substantive rights in an arbitral forum.[71]

Although Sherman does not argue that the Arbitration Agreement is a contract of adhesion, or that unequal bargaining power calls into question his assent to that Agreement, the present case is factually similar to *Rogers* and *Stadtlander:* Sherman signed a pre-printed arbitration agreement with RK at the outset of his employment with RK, and he now opposes RK's efforts to bind him to its terms. Likewise, Sherman objects (as the *Stadtlander* plaintiff did) to the arbitration *procedures* described in his agreement. Indeed, Sherman's only specific arguments against enforcing the arbitration agreement are that it (1) requires arbitration in Texas, and (2) replaces a federal judge with an arbitrator who will apply Louisiana law and federal procedures, thus "complicat[ing] the litigation."[72] In *Stadtlander*, the Louisiana Second Circuit Court of Appeal rejected the plaintiff's argument that she waived her substantive rights by waiving her right to appeal the arbitrator's decision. That decision is therefore instructive regarding how Louisiana courts might address Sherman's arguments against enforcing his Arbitration Agreement with RK. Here, as in *Stadtlander*, Sherman has not waived any of his substantive rights; instead, he has agreed to "vindicate" those substantive rights "by other means"—that is, through arbitration pursuant to the procedures set forth in his agreement with RK.[73]

### a.    Whether the FAA Preempts La. Rev. Stat. § 23:921(A)(2)

Sherman asserts that the Arbitration Agreement is unconscionable, because (1) LA. REV.

---

[71]  *Id.*

[72]  Rec. Doc. 6 at 3–4.

[73]  *See* 794 So.2d at 890–91 ("[S]ubstantive rights do not necessarily guarantee the right to a judicial proceeding, for . . . the right to a judicial proceeding is waivable by contract so long as the rights that proceeding were [sic] designed to protect can be vindicated by other means.").

STAT. § 23:921(A)(2) specifically bars courts from enforcing forum selection clauses like the one in his Arbitration Agreement with RK, and (2) the United States Supreme Court's decision in *M/S Bremen* allegedly provides that contractual forum selection clauses "should be held unenforceable if enforcement would contravene a strong public policy of the forum in which the suit is brought."[74] In response, RK contends that the FAA preempts Louisiana statutes restricting the use of contractual forum selection clauses, at least to the extent that these statutes interfere with this Court's enforcement of its Arbitration Agreement with Sherman.[75]

The FAA preempts state laws that restrict the enforcement of arbitration agreements and thereby conflict with the FAA's dispute resolution regime. In *Southland Corp. v. Keating*, the United States Supreme Court held that the FAA preempted a California statute that required parties to litigate claims in a judicial forum, reasoning that:

> In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.[76]

Following *Southland*, the United States Supreme Court has invalidated other state statues that interfere with the enforcement of arbitration agreements. In *Preston v. Ferrer*, for example, the Court held that the FAA preempted a California statute requiring that some disputes be initially adjudicated by an administrative agency, stating that the statute's "procedural prescriptions . . . conflict with the FAA's dispute resolution regime" by giving a state administrator exclusive jurisdiction over an issue

---

[74] Rec. Doc. 6 at 3 (citing *M/S Bremen*, 407 U.S. at 15). According to Sherman, LA. REV. STAT. § 23:921(A)(2) stands for the proposition that "every choice of forum clause in agreements between employees and employers is null, unless agreed to by employee after the incident." *Id.*

[75] Rec. Doc. 11 at 1–3.

[76] 465 U.S. at 14–15

the parties decided to arbitrate, and by "imposing prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally."[77]

The United States Court of Appeals for the Fifth Circuit has held that the FAA preempts state statutes that conflict with the FAA when they are applied to arbitration agreements. In *OPE Intern. LP v. Chet Morrison Contractors, Inc.*, the United States Court of Appeals for the Fifth Circuit concluded that the FAA preempted a Louisiana statute declaring certain contractual forum selection clauses null and void.[78] The statute at issue, LA. REV. STAT. § 9:2779, provided in part that "The legislature hereby **declares null and void and unenforceable as against public policy any provision in a contract . . . [that] [r]equires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state**[.]"[79] The court, considering the applicable authorities, held that because the statute "conditions the enforceability of arbitration agreements on selection of a Louisiana forum[,] a requirement not applicable to contracts generally" it "directly conflicts with Section 2 of the FAA."[80]

The operative language in LA. REV. STAT. § 9:2779 is similar to the language in LA. REV. STAT. § 23:921. While LA. REV. STAT. § 9:2779 "declares null and void and unenforceable as against public policy any provision in a contract . . . [that] [r]equires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state," LA. REV. STAT. § 23:921 provides that **"[t]he provisions of every employment contract or agreement . . . by which any foreign or**

---

[77] 552 U.S. 346, 356 (2008).

[78] 258 F.3d 443 (5th Cir. 2001).

[79] *Id.* at 446.

[80] *Id.* at 447–48.

**domestic employer or any other person or entity includes a choice of forum clause shall be null and void[.]**"[81] Since the arbitration agreement at issue in the present case concerns employment and stipulates that arbitration will occur in Lufkin or Nacogdoches, Texas, it contains a forum selection clause that violates LA. REV. STAT. § 23:921. Accordingly here, as in *Chet Morrison*, the statute at issue imposes conditions upon the enforceability of an arbitration agreement, doing so in this case by precluding the enforcement of the forum selection clause in RK and Sherman's Arbitration Agreement. The FAA imposes no such restriction on the present arbitration agreement. Therefore, LA. REV. STAT. § 23:921 directly conflicts with Section 2 of the FAA in the same way that LA. REV. STAT. § 9:2779 conflicted with Section 2 of the FAA in *Chet Morrison*. Thus, the FAA preempts LA. REV. STAT. § 23:921, just as it preempted LA. REV. STAT. § 9:2779 in *Chet Morrison*.[82]

Sherman's argument that this Court should decline to enforce his arbitration agreement under LA. REV. STAT. § 23:921, pursuant to *M/S Bremen*, is misplaced. The United States Supreme Court in *M/S Bremen* held that contractual forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the

---

[81] The statute provides, in full, that

> **The provisions of every employment contract or agreement**, or provisions thereof, by which any **foreign or domestic employer or any other person or entity includes a choice of forum clause** or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, **shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.**

[82] The United States Court of Appeals for the Fifth Circuit has twice addressed arguments that LA. REV. STAT. § 23:921 should invalidate forum selection clauses in arbitration agreements. *See Lim v. Offshore Speciality Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005); *Dahiya v. Talmidge Intern., Ltd.*, 371 F.3d 207 (5th Cir. 2004). In *Dahiya*, the court dismissed the appeal for lack of jurisdiction. *Dahiya*, 371 F.3d at 209. In *Lim*, which is discussed in the following paragraphs, the court concluded that an international treaty governing international arbitration required the parties to submit their dispute to arbitration, notwithstanding LA. REV. STAT. § 23:921. *Lim*, 404 F.3d at 906.

circumstances," but that "contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."[83]

In *Lim v. Offshore Speciality Fabricators, Inc.*, the United States Court of Appeals for the Fifth Circuit held that, under *M/S Bremen*, LA. REV. STAT. § 23:921 did not preclude the enforcement of an international arbitration agreement pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), because "the strong federal policy in favor of international arbitration agreements in general, and the application of the Convention to seamen's employment contracts in particular" outweighed Louisiana's public policy interests in limiting the use of forum selection clauses.[84]  In its analysis, the court reasoned that:

> Applying a straightforward preemption analysis, the Convention, as the "supreme Law of the Land", preempts the directly conflicting Louisiana statute, unless, as plaintiffs claim, it satisfies an exception to the Convention.[85]

Addressing whether LA. REV. STAT. § 23:921 satisfies an exception to the Convention, the court noted that:

> The Convention mirrors [*M/S Bremen*'s] policy concern by allowing a court charged with enforcing an arbitral award to refuse enforcement if "[t]he recognition or enforcement of the award would be contrary to the public policy of that country."[86]

Since the Convention contained a built-in "public policy" exception, the Court considered whether the strong state and federal policies favoring arbitration should give way to Louisiana's policy

---

[83]   407 U.S. at 10; 15.

[84]   *Lim*, 404 F.3d at 905–6 (construing Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, as codified at 9 U.S.C. § 201 *et seq*.).

[85]   *Id.* at 904.

[86]   *Id.* at 904–5.

disfavoring forum selection clauses, as articulated in LA. REV. STAT. § 23:921. Finding that " the overall balance of public policy concerns favors enforcing the arbitration agreements," the court concluded that the plaintiffs did not "meet the high burden of proof necessary to show public policy renders the arbitration clause unreasonable."[87]

In the present case, which involves a domestic contract governed by the FAA, the Convention and its public policy exception do not apply. In *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, the United States Court of Appeals for the Fifth Circuit explicitly rejected the argument that the *M/S Bremen* applies to arbitration agreements in general, stating that:

> Reisfeld's attack falters on its initial premise that the *Bremen* unreasonableness test is applicable to arbitration clauses. Rather, we agree with the district court that **the enforceability of the arbitration clause at issue is governed exclusively by the explicit provisions of the Federal Arbitration Act.** [88]

Pursuant to *Sam Reisfeld*, Sherman's arguments against arbitration must be resolved under the FAA, not under the *M/S Bremen*. Therefore, a "straightforward preemption analysis" applies here, requiring the court to conclude that the FAA preempts LA. REV. STAT. § 23:921.

### b. Conclusion

It is undisputed that Sherman signed an arbitration agreement with RK; further, RK alleges that the agreement was supported by adequate cause, including RK's own promise to arbitrate its claims against Sherman. Sherman does not address these arguments. Instead, he only attacks the validity of the arbitration agreement insofar as the agreement requires him to submit his claims to an arbitral forum in Texas. Since the FAA does not nullify contractual forum selection clauses such

---

[87] *Id.* at 906.

[88] 530 F.2d 679, 680 (5th Cir. 1976).

as the clause at issue in the present case, it preempts LA. REV. STAT. § 23:921 and forecloses Sherman's arguments on this point. Thus, the Court concludes that the parties formed a valid agreement to arbitrate.

**2.      Whether Sherman's Claims Fall Within the Scope of the Arbitration Agreement**

The next step under *Jones* looks to whether the dispute at issue falls within the scope of the arbitration agreement. In *Waste Management v. Residuos Industriales Multiquim, S.A. de C.V.*, the United States Court of Appeals for the Fifth Circuit explained that "[c]ourts determining whether a particular claim falls within the scope of the arbitration agreement focus on factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying those claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them."[89] In *Tittle v. Enron*, the United States Court of Appeals for the Fifth Circuit explained that, in cases where a contract contains an arbitration clause, courts apply state law to interpret its scope, but apply a federal "presumption of arbitrability," meaning that any ambiguities regarding the scope of the agreement "are resolved in favor of arbitration."[90] The effect of this presumption is that:

> [A] valid agreement to arbitrate applies unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.[91]

Sherman contends that the arbitration agreement at issue here does not prevent him from litigating his claims, because the arbitration agreement provides that:

---

[89]   372 F.3d 339, 344 (5th Cir. 2004).

[90]   463 F.3d 410, 418 (5th Cir. 2006) (applying Texas law to determine the disputed scope of an arbitration agreement).

[91]   *Personal Sec. & Safety Systems Inc. v. Motorola Inc*, 297 F.3d 388, 392 (5th Cir. 2002).

> [T]his Agreement does not and is not intended to prevent an employee from filing charges or complaints with the National Labor Relations Board, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration, or other federal, state, or local administrative agencies with whom employees have the right to pursue charges or complaints.[92]

This clause applies here, Sherman contends, because his:

> [C]auses of action against the defendant are employee-related and this litigation, which began in state court, is the result of his pursuing charges or complaints that are claims not covered by the agreement.[93]

The plain language of the arbitration agreement provides that the agreement does not prevent signatories from filing charges or complaints with "federal, state, or local administrative agencies." By implication, it *does* prevent signatories from filing actions in any state or federal court. Consequently, since Sherman initiated this action in state court, and is now litigating in federal court, the contractual clause cited above does not apply to his present actions. Accordingly, it is necessary to determine whether the arbitration agreement covers Sherman's claims.

On this point, the arbitration agreement provides that:

> The claims covered by this Agreement include, but are not limited to, claims for **wages or other compensation due**; claims for breach of any contract or covenant (express or implied); **tort claims**; **claims for discrimination** (including, but not limited to, race, sex, gender, religion, national origin, age, marital status, or medical condition, handicap or disability); claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall be an arbitration procedure different from this one, **claims for retaliation or harassment**, and claims for violation of any federal, state, local, or other governmental law, statute, regulation, or ordinance.[94]

Sherman claims (1) "religious and racial discrimination / harassment" (claims for discrimination and

---

[92] *Id.* at 4.

[93] *Id.* at 5.

[94] Rec. Doc. 4–3 at 44.

harassment); (2) intentional infliction of emotional distress (a tort); (3) defamation (a tort); and (4) libel (a tort).[95] He seeks damages for: (1) mental pain and suffering; (2) lost earnings; (3) physical pain and suffering; and (4) humiliation and embarrassment, as well as (5) wages due, pursuant to LA. REV. STAT. § 23:631.[96] Applying *Waste Management* and looking to the facts underlying these claims, Sherman's allegations fall within the scope of the arbitration agreement. He alleges that (1) during his employment at the restaurant, RK's employees, managers, supervisors, or owners used humiliating and demeaning "epithets, slurs, jargon, and talk" directed at his race and religion;[97] his (2) supervisors falsely accused him of "theft, fraud, neglect of duties, and poor employee relations" in the presence of Sherman's co-workers;[98] and (3) following his termination, the allegations against him were repeated to his prospective employers.[99] Given that these facts align closely with the claims set forth in the arbitration agreement, the Court finds that the arbitration agreement covers the dispute at issue, satisfying the second step of the *Jones* inquiry.

### 3. Whether any Federal Statute or Policy Renders Sherman's Claims Nonarbitrable

The final step of the *Jones* inquiry looks to whether any federal statute or policy renders the plaintiff's claims nonarbitrable. Sherman argues that:

> The Arbitration Agreement is unconscionable because it[:] [1] forces [Sherman], a resident of New Orleans, Louisiana, to arbitrate any claim against the company in Lufkin, Texas or Nacogdoches, Texas, both of which are over . . . 350 miles away[;]

---

[95] Rec. Doc. 1–1 at 1–4.

[96] *Id.* at 4–5.

[97] *Id.* at 2.

[98] *Id.* at 3.

[99] *Id.* at 2.

[and] [2] attempts to replace a federal judge with an arbitrator, who will be a Texas attorney, who will interpret Louisiana law using Federal Civil Procedure and the Federal Rules of Evidence.[100]

According to Sherman, this means that:

[1] [A]ll of the witnesses, whom [Sherman] will have testify in his behalf, either live in New Orleans or nearby. The travel required to attend the arbitration would make it virtually impossible for plaintiff to present his case since it would be both cost prohibitive and time consuming. . . [and] [2] [T]he Arbitration Agreement, instead of streamlining the resolution of the dispute, actually further complicates the litigation in that a Texas attorney will interpret Louisiana law using the Federal procedures.[101]

Apart from LA. REV. STAT. § 23:921, which is preempted, and the *M/S Bremen* decision, which does not alter the preemptive effect of the FAA, Sherman offers no authority to support his assertions. As stated above, the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements," and was enacted to "put arbitration agreements on the same footing as other contracts."[102] The Court cannot conclude that the FAA and its underlying policy must give way to some other countervailing statute or policy in this case, simply because the Arbitration Agreement here requires that the parties resolve their dispute in an arbitral forum in Texas, using the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

### IV. Conclusion

RK requests that this Court stay litigation pending arbitration pursuant to 9 U.S.C. § 3 because a valid Arbitration Agreement exists, and Sherman's claims fall within the scope of that agreement.

---

[100] Rec. Doc. 6 at 4–5.

[101] *Id.* at 5.

[102] *Iberia Credit Bureau,* 379 F.3d at 166.

It is undisputed that Sherman signed the Arbitration Agreement, and also undisputed that the Arbitration Agreement is supported by lawful cause. Sherman's only attack on the Arbitration Agreement—that it is unconscionable and unenforceable under LA. REV. STAT. § 23:921—is unavailing because the FAA preempts LA. REV. STAT. § 23:921, and the Court has not been provided with any other supporting authority on this point. The Arbitration Agreement at issue in the present case provides that the parties will arbitrate all tort claims, discrimination claims, claims of harassment, claims of retaliation, and claims for wages due. Sherman's allegations "touch" each of these categories. Applying the FAA's presumption in favor of arbitration, each of Sherman's claims fall within the scope of the Arbitration Agreement. Since Sherman has failed to show that other grounds foreclose arbitration, the Court will grant RK's motion. Accordingly,

**IT IS ORDERED** that RK's "Motion to Stay Proceedings Pending Arbitration"[103] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this __11th__ day of September, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[103] Rec. Doc. 4.